# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

MARTIN NOLAND, )
)
        Plaintiff, )
)
v. )   Case No. CIV-16-249-SPS
)
NANCY A. BERRYHILL, )
Acting Commissioner of the Social )
Security Administration,[1] )
)
        Defendant. )

## OPINION AND ORDER

The claimant Martin Noland requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying his application for benefits under the Social Security Act. He appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: 1) whether the decision was supported by substantial evidence, and 2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on March 13, 1962, and was fifty-two years old at the time of the administrative hearing (Tr. 79). He graduated high school, and has worked as a production machine tender, maintenance repairer, construction worker I, and a delivery driver (Tr. 67, 79). The claimant alleges he has been unable to work since July 18, 2012, due to liver cancer stage 2, liver disease, type II diabetes, high blood pressure, depression, and Hepatitis B (Tr. 249).

## Procedural History

On July 30, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Doug Gabbard, II, conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated August 8, 2014 (Tr. 57-69). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that he was restricted to semi-skilled work, which requires understanding, remembering, and carrying out some detailed skills but does not require doing more complex work duties; he is able to have superficial interpersonal contact with supervisors and co-workers; he can have only occasional contact with the general public; and he can attend and concentrate for extended periods with normal breaks (Tr. 63). The ALJ thus concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *e. g.*, housekeeping cleaner and small product assembler (Tr. 67-69).

## Review

The claimant alleges that the ALJ erred in assessing his subjective complaints, particularly with regard to his mental impairments. The Court agrees, and the decision of the Commissioner should therefore be reversed.

The ALJ determined that the claimant had the severe impairments of chronic liver disease, status post liver cancer, and affective disorder (Tr. 60). Evidence related to the claimant's mental impairments indicates that the claimant went to the emergency room a number of times for chest discomfort (Tr., *e. g.*, 515, 627, 704). Heart problems were ruled out, although he was noted to have anxiety (Tr. 515). On February 12, 2014, the claimant was detained for an emergency detention period under mental health laws after reporting feelings of helplessness and hopelessness and contemplating suicide (Tr. 769-

786). On February 19, 2014, his discharge diagnosis was major depressive disorder, single episode, severe, specified as with psychotic behavior (Tr. 769). Inpatient treatment notes reflect that the claimant was compliant with treatment and that he improved while in the facility (Tr. 778-785).

The claimant then continued to receive outpatient mental health treatment through Mental Health Services of Southern Oklahoma (Tr. 794-810). In April 2014, notes reflect that the counselor was working with the claimant to take small steps in getting out of his house (Tr. 798). In May 2014, a health screening indicated reports from the claimant that he was having thoughts of hurting others, a loss of pleasure in most activities, anxiety all the time, and panic attacks three or four times a week and made worse around crowds (Tr. 808). He also reported problems with short term memory and the ability to concentrate (Tr. 808). He was given a fair prognosis due to his health issues and lack of treatment history (Tr. 808).

On March 23, 2013, Dr. Parind Shah conducted a psychiatric evaluation of the claimant (Tr. 461-462). Dr. Shah assessed the claimant with depressive disorder, recurrent, moderate without suicidality or psychotic features, and that he believed the claimant's symptoms would improve over the course of the next twelve months (Tr. 462). He was alert and oriented, could not perform multiplication, and abstract reasoning and judgment were intact.

State reviewing physicians found that the claimant had the severe impairment of affective disorders, and that he was moderately limited in the ability to carry out detailed instructions, maintain attention and concentration for extended periods, and interact

appropriately with the general public (Tr. 134-135).  This physician concluded that the claimant could understand, remember, and perform simple and some complex tasks, relate to others on a superficial work basis, and adapt to a work situation (Tr. 135).

Evidence submitted to the Appeals Council reflects that through December 2015, the claimant reported continued depression, anxiety, and anger (Tr. 19).  He had another bout of suicidal ideation on October 6, 2015, and was hospitalized for it after missing several mental health treatment appointments and running out of his medications (Tr. 23-33, 42).

In his written opinion, the ALJ summarized the claimant's hearing testimony, as well as the medical evidence in the record.  Specifically, he noted that the claimant's depression had developed alongside his liver impairment, and noted the lack of mental health evidence as support for sending the claimant for Dr. Shah's evaluation (Tr. 65). He further noted the claimant's hospitalization in 2014, noting his improvement upon discharge but also stating that the depression did continue despite medications (Tr. 66). He stated that the depression did not interfere with the claimant's memory or orientation and nothing in the record suggested that it was disabling on its own or in combination (Tr. 66).  He then found the claimant not credible, stating that he first pursued mental health treatment after the alleged onset date and that the "brief period of treatment does nothing to bolster his claims" (Tr. 66)  Noting the claimant's financial limitations, the ALJ nevertheless stated that the record lacked emergency and clinical care that might be expected with disabling levels of depression, and that the ALJ's observations of the claimant's physical condition at the administrative hearing undermined the claimant's

asserted decrease in physical ability as well (Tr. 66). He gave great weight to the state reviewing physician opinion, which pre-dated all of the mental health treatment evidence except for Dr. Shah's consultative exam, then stated without explanation that the later evidence from the claimant's hospitalization supported "the social restrictions" (Tr. 67). His final comment with regard to the claimant's impairments was that his depression restricted his ability to focus on tasks and interact with others (Tr. 67).

The claimant argues that the ALJ failed to properly assess his subjective complaints, particularly because the ALJ improperly found he failed to seek medical treatment despite the fact that mental illness can *cause* a claimant to not comply with medications or treatment. The Social Security Administration eliminated the term "credibility" in Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016), and has provided new guidance for evaluating statements pertaining to intensity, persistence, and limiting effects of symptoms in disability claims. The Commissioner asserts that, because the ALJ's opinion pre-dated the new guidance, the previous standards still apply. Moreover, the Commissioner agrees that blaming a claimant for failing to seek treatment of a mental illness is a "thorny issue," but nonetheless asserts that even if it was error to make such a finding, the ALJ gave other reasons for finding the claimant not credible. But even under the old standard, this is error. "Because a credibility assessment requires consideration of all the factors in combination, when several of the factors *relied upon* by the ALJ are found to be unsupported or contradicted by the record, [the Court is] precluded from weighing the remaining factors to determine whether they, in themselves,

are sufficient to support the credibility determination." *Bakalarski v. Apfel*, 1997 WL 748653 at *3 (10th Cir. 1997).

Because the Court finds that the ALJ erred in his analysis under either standard, the case must be reversed and remanded. *See also Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) ("Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision.") (*quoting Sloan v. Astrue*, 499 F.3d 883, 889 (8th Cir. 2007).

The Court further finds that a few more words on the ALJ's analysis at step four are necessary. The RFC assessment (which accounts for the medical evidence *and* the claimant's subjective complaints) must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003). Here, the ALJ failed to cite to any evidence in the record to connect his RFC findings with the evidence related to the claimant's mental impairment, appearing at times to even question the severity of the impairment entirely.

Furthermore, the ALJ appeared to largely discount the claimant's mental impairment based on his improvement upon discharge from inpatient hospitalization for his mental impairments. In doing so, however, the ALJ disregarded the highly structured environment the claimant experienced during his first hospitalization. *See, e. g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(6)(b) ("[A claimant's ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate [a claimant's] ability to complete tasks in the context of regular employment during a normal workday or workweek.").

This conclusion is bolstered by the evidence submitted to the Appeals Council, which demonstrates that the claimant was hospitalized again for very similar suicidal ideation the following year. Even though the ALJ did not receive this evidence prior to issuing his decision, the Appeals Council *was* required to properly consider this evidence if it was: (i) new, (ii) material, and (iii) "related to the period on or before the date of the ALJ's decision," *see Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004), *quoting Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995), but failed to do so here. Evidence is new if it "is not duplicative or cumulative," and this evidence qualifies as such. *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003), *quoting Wilkins v. Sec'y, Dep't of Health & Human Svcs.*, 953 F.2d 93, 96 (4th Cir. 1991). Second, evidence is material "if there is a reasonable possibility that [it] would have changed the outcome." *Threet*, 353 F.3d at 1191, *quoting Wilkins*, 953 F.2d at 96. The evidence must "reasonably [call] into question the disposition of the case." *Id. See also Lawson v.*

*Chater*, 83 F.3d 432, 1996 WL 195124, at *2 (10th Cir. April 23, 1996) (unpublished table opinion). Here, this evidence supports the serious nature of the claimant's mental impairments, and calls into question the ALJ's decision, particularly in light of the claimant's combination of impairments. In finding the claimant could perform a limited range of light work, the ALJ relied, at least in part, on the sparse nature of the claimant's mental health treatment records.

Finally, the evidence is chronologically relevant because it pertains to the time "period on or before the date of the ALJ's Decision." *Kesner v. Barnhart*, 470 F. Supp. 2d 1315, 1320 (D. Utah 2006), *citing* 20 C.F.R. § 404.970(b). The claimant meets the insured status through December 31, 2016, so all of the records are relevant to the claimant's condition as to the existence or severity of her impairments. *See Basinger v. Heckler,* 725 F.2d 1166, 1169 (8th Cir. 1984) ("[M]edical evidence of a claimant's condition subsequent to the expiration of the claimant's insured status is relevant evidence because it may bear upon the severity of the claimant's condition before the expiration of his or her insured status."), *citing Bastian v. Schweiker,* 712 F.2d 1278, 1282 n.4 (8th Cir. 1983); *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983); *Dousewicz v. Harris,* 646 F.2d 771, 774 (2d Cir. 1981); *Poe v. Harris,* 644 F.2d 721, 723 n. 2 (8th Cir. 1981); *Gold v. Secretary of H.E.W.,* 463 F.2d 38, 41-42 (2d Cir. 1972); *Berven v. Gardner,* 414 F.2d 857, 861 (8th Cir. 1969).

The evidence presented by the claimant after the administrative hearing thus *does* qualify as new and material evidence under C.F.R. §§ 404.970(b) and 416.1470(b), and the Appeals Council considered it (Tr. 2), so the newly-submitted evidence "becomes

part of the record . . . in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." *Chambers*, 389 F.3d at 1142, *citing O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). The ALJ had no opportunity to perform the proper analysis, and while the Appeals Council considered this new evidence, they failed to analyze it in accordance with the aforementioned standards. In light of this new evidence, the Court finds that the decision of the Commissioner is not supported by substantial evidence because the ALJ may not have had the opportunity to perform a proper analysis of the newly-submitted evidence in accordance with the authorities cited above, and the Commissioner's decision must therefore be reversed and the case remanded for further proceedings. On remand, the ALJ should properly evaluate *all* the evidence in the record. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 25th day of September, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**